## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

PATRICIA BRUCE,
Plaintiff

vs

Case No. 1:08-cv-328
(Dlott, J.; Hogan, M.J.)

COMMISSIONER OF
SOCIAL SECURITY,
Defendant

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of

Errors (Doc. 6), and the Commissioner's response in opposition. (Doc. 7).

## PROCEDURAL BACKGROUND

Plaintiff, Patricia Bruce, was born in 1950 and was 55 years old at the time of the ALJ's

decision. Plaintiff completed two years of college. Her past work history was as a coordinator of

religious events for a church. Plaintiff filed an application for DIB in August 2005, alleging

disability since June 2004 due to degenerative arthritis in the spine, hip, and knee, Type II

diabetes, hypertension, hyperlipidemia, obesity, gout, and allergic rhinitis. Plaintiff's application

was denied initially and upon reconsideration. Plaintiff requested and was granted a de novo

hearing before an ALJ. Plaintiff, who was represented by counsel, appeared and testified at two

hearings before ALJ Sarah Miller. A vocational expert also appeared and testified at the second

hearing.

On October 26, 2006, the ALJ issued a decision denying plaintiff's DIB application. The ALJ determined that plaintiff suffers from severe impairments of obesity, diabetes, diabetic neuropathy, degenerative joint disease of the lumbar and cervical spine, degenerative joint disease of the knees, trochanteric bursitis of the right hip, and hypertension, but that such impairments do not meet or equal the level of severity described in the Listing of Impairments. (Tr. 18). The ALJ determined that plaintiff's allegations regarding her limitations are not totally credible. (Tr. 17, 18). According to the ALJ, plaintiff retains the residual functional capacity (RFC) to perform a range of light work activities. (Tr. 17, 18). The ALJ determined that plaintiff could perform her past relevant work and a significant number of other jobs in the national economy, including jobs as a semi-skilled collection clerk, semi-skilled order clerk, semi-skilled funds clerk, and semi-skilled code clerk/entry clerk. (Tr. 18, 19). Consequently, the ALJ concluded that plaintiff is not disabled under the Act, and therefore not entitled to DIB.

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v.*

2

*N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the

3

performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §404.1521(b). Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). The severity requirement may be employed as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint. *Higgs v. Bowen,* No. 87-6189, slip op. at 4 (6th Cir. Oct.28, 1988). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985)(citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The Secretary's decision on this issue must be supported by substantial evidence. *Mowery v. Heckler*, 771 F.2d 966 (6th Cir. 1985).

4

Plaintiff may establish a prima facie case of disability by showing an inability to perform relevant previous employment. If plaintiff retains the residual functional capacity to perform the physical and mental requirements of work performed in the past, plaintiff is not disabled. 20 C.F.R. § 404.1520(e).

Plaintiff must prove an inability to return to his or her former type of work and not just to his or her particular former job. *Studaway v. Secretary of HHS*, 815 F.2d 1074, 1076 (6th Cir. 1987), citing *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986). "Former type" of work means the general kind of work, e.g., janitorial work, that plaintiff used to perform. *Studaway*, 815 F.2d at 1076. In other words, the ALJ must consider whether the claimant can perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Garcia v. Secretary of Health and Human Services*, 46 F.3d 552, 557 (6th Cir. 1995), citing Social Security Ruling 82- 61. The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of "not disabled." Social Security Ruling 82-62.

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima

5

facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by

6

plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Kirk*, 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky*, 35 F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985)(citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial

deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004)*; Walters*, 127 F.3d at 530. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The Social Security regulations likewise recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating

8

physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson*, 378 F.3d at 544. In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17

9

F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

## MEDICAL EVIDENCE

From 1997 to 1999, plaintiff treated with orthopedist Michelle Andrews, M.D., for right hip trochanteric bursitis, degenerative joint disease of the right hip, left foot midfoot degenerative joint disease with spurs, and bilateral degenerative joint disease of the knees. (Tr. 120-138). In January 1999, plaintiff underwent right knee arthroscopy which resolved her pain. (Tr. 138).

In March 2004, plaintiff saw Dr. Williams, her treating family physician, for medication for hip and back pain. (Tr. 189). On June 18, 2004, plaintiff underwent a cervical spine MRI which revealed degenerative disc disease and spondylosis in the cervical spine, but no disc herniation, and mild to moderate foraminal stenosis. (Tr. 147). A July 30, 2004 lumbar spine x-ray revealed severe degenerative changes at multiple disc levels and facet sclerosis. (Tr. 140). An x-ray of the right hip in July 2004 showed mild degenerative change at the hip. (Tr. 141).

On August 10, 2004 and October 18, 2004, upon referral of Dr. Williams, plaintiff consulted with orthopedist Matthew McLaughlin, M.D., regarding her neck and chronic low back pain. (Tr. 145-146, 156-157). Plaintiff reported she experienced back pain for several years, but no numbness or weakness. (Tr. 148). Plaintiff denied physical therapy or other treatment, but

10

reported some relief with Voltaren and Glucosamine. (Tr. 148). Plaintiff had a normal gait, no clear trigger points in her spine, limited lumbar and cervical spine range of motion, no arm or leg atrophy or weakness, negative straight leg raising, and symmetrical reflexes. (Tr. 149). Dr. McLaughlin noted that plaintiff's MRI revealed degenerative changes with mild canal stenosis, but no significant herniation or nerve chord compression. (Tr. 149). He recommended a course of physical therapy and continued medication. (Tr. 149).

In September 2004, Dr. Williams saw plaintiff for complaints of dizzy spells and heart palpitations; he saw her a in-follow exam up in November 2004 to refill medication for hypertension, diabetes, and allergies. (Tr. 192-93).

In October 2004, Dr. McLaughlin noted that plaintiff's physical examination was unchanged, and an MRI showed multilevel degenerative disc and facet joint changes, with disc bulging and mild to moderate stenosis. (Tr. 156). Dr. McLaughlin did not feel spine injections or physical therapy would benefit plaintiff and referred her to trial chiropractic treatments with Voltaren and Ultracet for pain. (Tr. 157).

Dr. Williams' office records in February, May and August 2005 state that plaintiff was complaining of situational anxiety and depression, and left hip, neck and lower back pain, which required pain medication on a regular basis. (Tr. 195-196).

In March 2005, plaintiff was seen by orthopedist George Shybut, M.D., for a left hip evaluation. Dr. Shybut noted that she had bursitis, which was treated with physical therapy and that she "did quite well" at her last session. (Tr. 169). He continued her with physical therapy. (Tr. 169).

In August 2005, Dr. Williams listed plaintiff's current diagnoses as chronic neck and low

11

back pain secondary to severe degenerative joint disease of the cervical and lumbar spine; Type II Diabetes Mellitus; hypertension; hyperlipidemia; gout; obesity; and allergic rhinitis. (Tr. 208).

In November 2005, plaintiff underwent nerve conduction studies to evaluate numbness in her toes for one year. (Tr. 220). The EMG revealed moderate sensorimotor peripheral neuropathy, but no radiculopathy. (Tr. 221).

On January 23, 2006, upon referral of her family physician, Dr. Williams, plaintiff underwent a functional capacity evaluation. (Tr. 223-227). The therapist concluded that plaintiff "has demonstrated current functional tolerances and capabilities limited to the Sedentary Physical Demands Category." (Tr. 223). Plaintiff "demonstrated significant limitations in functional and postural tolerances due to persistent symptoms of low back pain." *Id.* The therapist opined that plaintiff is not capable of resuming her previous line of work without restrictions on postural and weight bearing activities. *Id.* The therapist also opined that she was "skeptical as to [plaintiff's] ability to tolerate a full time position even within the sedentary demand level due to poor tolerances with sustained postures and activities. . . ." *Id.*

In February 2006, Dr. Williams assessed transient chest pain possibly related to GI gas, chronic neck pain secondary to degenerative joint disease of the cervical spine, hypertension, and diabetes mellitus, Type II. (Tr. 233).

On March 6, 2006, plaintiff was examined by Charles Martin, DPM, for "insurance mandated diabetic foot care checkup." (Tr. 235). In a narrative report to plaintiff's attorney, Dr. Martin reported that plaintiff presented with very severe neuropathy of the feet. (Tr. 229). He noted that "diabetic neuropathy can be quite painful even though the patient has no ability to sense pain as far as stimulus." (Tr. 229). He also reported that plaintiff has "one of the worst

12

cases" of metatarsus adductus[1] he has ever seen with x-rays documenting the severity. (Tr. 229). Dr. Martin diagnosed severe degenerative joint disease in both feet. *Id.* Additionally, Dr. Martin stated that plaintiff's left foot has such a significant degree of deformity and significant pitting edema that Charcot Arthropathy[2] is the most likely cause. *Id.* Dr. Martin opined that plaintiff's knee problems and back pain are due to the fact that plaintiff is apropulsive on gait with a maximum pes valgo planus [flat feet]. (Tr. 229, 235). Finally, Dr. Martin opined that plaintiff's "foot problems are such that she would be significantly limited in what she could potentially do in a job situation" and when combined with "her diabetes, her size and her other associated problems and complaints" she would not be able to sustain gainful employment. (Tr. 230).

On July 13, 2006, plaintiff was diagnosed with left-sided diverticular disease through endoscopy testing. (Tr. 236). In a September 15, 2006 office visit, plaintiff reported more difficulty sleeping at night and more right hip pain than in the past. (Tr. 242). Dr. Williams listed the diagnosis of chronic anxiety and refilled the following medications: Tenoretic 50/25, Fexofenadine 180 mg, BuSpar 15 mg, and Neurontin 600 mg. (Tr. 242).

---

[1]"Metatarsus adductus is a foot deformity. The bones in the middle of the foot bend in toward the body. Metatarsus adductus is thought to occur as a result of the infant's position inside the uterus. This is a relatively common disease affecting about one out of every 1,000 to 2,000 live births. In most children, the problem corrects itself as normal use of the feet develops. Stretching exercises may be needed when the problem does not go away with normal use of the foot. These are done if the foot can be easily moved into a normal position. Rarely, this disease causes a rigid deformity that cannot be corrected with stretching exercises. In these cases, casting and even surgery may be needed." MedlinePlus Medical Encyclopedia, **http://www.nlm.nih.gov/medlineplus/ency/article /001601.htm** (last visited Dec. 5, 2008).

[2]"Charcot arthropathy is a progressive condition of the musculoskeletal system that is characterized by joint dislocations, pathologic fractures, and debilitating deformities. This disorder results in progressive destruction of bone and soft tissues at weight-bearing joints; in its most severe form, it may cause significant disruption of the bony architecture. Charcot arthropathy can occur at any joint; however, it occurs most commonly in the lower extremity, at the foot and ankle." **http://www.emedicine.com/orthoped/topic381.htm** (last visited Dec. 5, 2008).

13

## HEARING TESTIMONY

Plaintiff testified that she suffers pain in her knees, neck, back, feet and hands. Additionally, she testified that she suffers from extreme pain on the left side of her neck that shoots pain through her shoulders, into her elbows and down her spine. (Tr. 260). Plaintiff testified that her feet hurt all the time, her feet swell up and she needs to elevate them; the pain is so severe that she can only stand for 2 minutes at a time and walk about a block before she has to sit down. (Tr. 264). Plaintiff spoke of extreme sleepiness, grogginess and sometimes dizziness caused by her medications. (Tr. 259). Plaintiff testified that she has a hard time sleeping at night and requires a nap 2-3 hours a day, she cries at least 2 times a week, and has issues with diarrhea that requires frequent use of the restroom. (Tr. 260-261, 282). She drops things because her hands go numb. (Tr. 264, 291-292). She testified that she can lift and hold 4-5 pounds and she drops knives. (Tr. 282, 284, 286-287). Plaintiff testified that she stays at home 85% of the time and only goes out with her husband or daughter and primarily to church or out to eat, as she is unable to do much cooking. (Tr. 262, 279). Plaintiff testified that her husband does most of the housework, including all of the vacuuming. He brings her the laundry to fold from a basket. She can only do dishes if she sits at a stool. (Id). Plaintiff testified that she does not think she could work answering phones for 40 hours per week because she would not "be able to be sitting down long enough to answer the phone on a continuous basis," and would need to be "up and down and then back and forth to the bathroom a lot." (Tr. 291). She testified that she worked as a coordinator of religious education, and continued to work after her alleged onset date of disability, working fewer hours. (Tr. 257).

A vocational expert testified at the hearing. The VE testified that plaintiff had past

14

relevant work experience as a coordinator of religious education. (Tr. 294). He indicated that an alternative title for plaintiff's job under the *Dictionary of Occupational Titles* (DOT) would be director of religious education, § 129.107.022, which was skilled, sedentary work. (Tr. 294). The ALJ asked the VE to assume an individual of plaintiff's age, education, and experience, who had plaintiff's medical history, and could sit for 6 hours, stand for 2 hours, lift 10 pounds occasionally and 5 pounds frequently, and needed to be allowed to alternate between sitting and standing at will. (Tr. 295-96). The VE testified that such a person could perform plaintiff's past relevant work. (Tr. 297). The VE testified that plaintiff had transferrable skills, including purchasing supplies, enlisting volunteers, planning educational programs, coordinating special events, and planning and managing a budget. (Tr. 70, 297). Such skills transferred to other sedentary jobs, including: collection card clerk and order clerk, and there were approximately 20,000 of these jobs in the regional economy. (Tr. 223, 298-99). Assuming plaintiff's testimony was credible, or that she needed to elevate her legs for 2 hours and nap for 2 hours each day, no jobs would be available. (Tr. 300). The VE also testified that if a person can only lift four to five pounds, is dropping things, and has numbness and tingling in her hands, she would be precluded from any clerk work and there would be no full-time work available. (Tr. 301).

## OPINION

Plaintiff assigns six errors in this case. Plaintiff contends the ALJ erred: (1) in her RFC decision; (2) by not considering plaintiff's limitations from carpal tunnel syndrome; (3) in finding plaintiff not credible; (4) in assessing plaintiff's complaints of pain; (5) by failing to consider plaintiff's inability to sustain a full work week in accordance with Social Security

15

Ruling 96-8p; and (6) by evaluating plaintiff's past relevant work under the incorrect DOT number. For the reasons that follow, the Court finds the ALJ's decision is supported by substantial evidence and should be affirmed.

First, plaintiff contends the ALJ erred in determining plaintiff has an RFC for a range of light work. (Doc. 6 at 8-9). Plaintiff alleges the ALJ failed to consider the January 2006 functional capacity evaluation (FCE) in which the physical therapist opined she was skeptical that plaintiff could perform full-time work even at the sedentary level of exertion. (Tr. 223). Plaintiff also contends the ALJ disregarded the treating podiatrist's opinion that the combination of plaintiff's impairments would render her disabled. (Tr. 229-230).

In assessing plaintiff's RFC, the ALJ reviewed the assessments of the state agency doctors who opined that plaintiff had an RFC for a modified range of light work; the functional capacity evaluation performed in January 2006 at the request of plaintiff's family physician; and the opinion of disability given by Dr. Martin, the podiatrist who examined plaintiff in March 2006. (Tr. 17). The ALJ concluded that plaintiff's foot, knee and hip impairments would limit her to light work consistent with the opinions of the state agency doctors. The ALJ determined these opinions were consistent with the record as a whole and "not significantly inconsistent with the functional capacity evaluation" performed in January 2006. (Tr. 17). The ALJ determined that with an RFC for a modified range of light work, and based on the testimony of the VE, plaintiff could perform her past relevant work as performed and as generally performed in the economy. (Tr. 17). The ALJ also determined that even if plaintiff was limited to sedentary work with a sit/stand option, she could perform her past relevant work as performed in the economy as well as a significant number of other sedentary jobs. (Tr. 18, 297).

16

Contrary to plaintiff's arguments, the ALJ did not ignore the functional capacity evaluation or Dr. Martin's opinion in assessing plaintiff's RFC. (Tr. 17). The ALJ reasonably determined that the limitations set forth in the January 2006 FCE were consistent with sedentary work activity. The FCE of the physical therapist indicated that plaintiff retained the ability to occasionally (up to 33% of the time) stoop, stand, walk, and overhead reach; to frequently (from 34-66% of the time) reach forward; to continuously (67 to 100% of the time) sit, and use her arms for dextrous movements; and to lift between 15 and 25 pounds, and frequently lift from negligible amounts of weight to 12 pounds. (Tr. 224). The therapist also assessed plaintiff's strength as essentially 75% of normal. (Tr. 225). Sedentary work involves lifting no more than 10 pounds at a time, standing or walking only occasionally, *i.e.*, up to 1/3 of an eight hour workday or for no more than two hours of an eight-hour workday, and sitting six hours of an eight-hour workday. *See* 20 C.F.R. § 404.1567(a); Social Security Ruling 83-10. Therefore, the ALJ's finding of a sedentary RFC in the alternative is consistent with the January 2006 FCE upon which plaintiff relies.

To the extent the physical therapist who administered the FCE was "skeptical" of plaintiff's ability to engage in full time employment "due to poor tolerances with sustained postures and activities" (Tr. 223), the ALJ's hypothetical question to the VE included the limitation that plaintiff be permitted to alternate positions at will which would accommodate this concern. (Tr. 297). Moreover, the ALJ was not required to give any special deference to the therapist's functional capacity evaluation because therapists are not considered acceptable medical sources under the Social Security regulations. *Compare* 20 C.F.R. § 404.1513(a) (acceptable medical sources include licensed physicians, licensed or certified psychologists,

licensed optometrists, licensed podiatrists and qualified speech-language pathologists), with 20 C.F.R. § 404.1513(d)(1) (medical sources not listed in § 1513(a), such as nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists and therapists are considered to be "other sources" rather than "acceptable medical sources"). *See also Nierzwick v. Commissioner of Social Security,* 7 Fed. Appx. 358, 2001 WL 303522 at * 4 (6th Cir. March 19, 2001) (physical therapist's report not afforded significant weight because therapist not recognized as an acceptable medical source); *Jamison v. Commissioner,* 2008 WL 2795740, *10 (S.D. Ohio 2008) (Dlott, J.) (same). Therefore, the ALJ was entitled to discount the physical therapist's FCE to the extent it suggested an inability to perform full-time sedentary work activity.

Plaintiff also incorrectly asserts that Dr. Martin's opinion is entitled to special deference under the treating physician rule. Dr. Martin opined that given plaintiff's foot problems in combination with "her diabetes, her size and her other associated problems and complaints" she would be unable to sustain gainful employment. (Tr. 230). Dr. Martin, however, examined plaintiff on only one occasion and does not qualify as a treating physician whose opinion is entitled to special deference in the evaluation of plaintiff's disability claim. *See* 20 C.F.R. § 404.1527(d)(2); *Kornecky v. Commissioner,* 167 Fed. Appx. 496, 506-507, 2006 WL 305648, *9 (6th Cir. 2006) ("a plethora of decisions unanimously hold that a single visit does not constitute an ongoing treatment relationship") (citing *White v. Barnhart,* 415 F.3d 654, 658 (7th Cir. 2005); *Cunningham v. Shalala,* 880 F. Supp. 537, 551 (N.D. Ill. 1995)). *See also Crawford v. Commissioner,* 363 F.3d 1155, 1160 (11th Cir. 2004); *Duyck v. Chater,* 907 F. Supp. 338, 342 (D. Oregon 1995). Therefore, Dr. Martin's opinion that plaintiff is disabled is not entitled to greater weight on this basis. Moreover, Dr. Martin's opinion that plaintiff is unable to sustain

gainful employment is entitled to no deference because it is the prerogative of the Commissioner, and not plaintiff's doctor, to make a disability determination. *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

Without citing to specific portions of the record, plaintiff also argues "the evidence is overwhelming that Plaintiff lacks the ability to perform the standing, walking and stooping required of light work. . . ." (Doc. 6 at 9). Likewise, without citing to specific evidence in the record, plaintiff argues "the evidence of Plaintiff's neuropathy and cervical issues" would rule out sedentary employment. Without any particular citations to the medical evidence in this case in support of these claims and a showing of how such evidence is pertinent to plaintiff's argument, the Court is unable to assess the merits of plaintiff's argument.

In any event, the Court notes that the RFC opinions of the state agency physicians support the ALJ's conclusion that plaintiff retains the ability to perform a range of light work activity. (Tr. 176-182). In addition, the physical therapy FCE upon which plaintiff relies for her earlier argument shows that plaintiff retains the ability to occasionally (up to 33% of the time) stoop, stand, and walk. (Tr. 224). The ALJ's alternative hypothetical to the VE, consistent with the FCE, limited plaintiff to standing and walking for two hours, sitting for six hours, frequent lifting of 10 pounds, occasional lifting of five pounds, and alternate sitting and standing at will. (Tr. 297). In response, the VE testified that plaintiff would be able to perform her past relevant work as defined by the Department of Labor. (Tr. 296-97). The ALJ's conclusion that plaintiff would not be disabled if limited to sedentary work because she retains the functional capacity to perform her past relevant work and a significant number of other jobs in the national economy (Tr. 18) is substantially supported by the record as a whole. Plaintiff's first assignment of error is

without merit and should be overruled.

Plaintiff's second assignment of error asserts that the ALJ erred by failing to consider plaintiff's carpal tunnel syndrome which, according to plaintiff, limits her ability to perform sedentary work. (Doc. 6 at 9). In support of her argument, plaintiff relies primarily on her own testimony of limited use of her hands. (Doc. 6 at 9, citing Tr. 282, 284, 286-87). However, plaintiff's allegations alone are insufficient to show she has an impairment. *See* 20 C.F.R. § 404.1508 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."). Plaintiff also asserts that "[t]hroughout the claimant's records, her symptoms of carpal tunnel issues were mentioned." (Doc. 6 at 10, citing Tr. 190, 220-221). However, the only medical evidence cited by plaintiff supporting this claim of error consists of two records. A June 16, 2004 office note from Dr. Williams, plaintiff's family physician, states, "Paresthesias of left hand. Rule out carpal tunnel syndrome." (Tr. 190). The Court has reviewed all of Dr. Williams' office notes subsequent to this date and there is no further mention of any problems with plaintiff's hands. (Tr. 191-218, 232-233, 242). The EMG nerve conduction study referenced by plaintiff in her brief does not mention carpal tunnel syndrome. (Tr. 220-221). The record as a whole fails to support plaintiff's second assignment of error and the ALJ did not err in failing to consider any alleged limitations from any alleged carpal tunnel syndrome.

Assignments of error three and four will be considered together. Plaintiff argues the ALJ erred in assessing plaintiff's credibility and allegations of pain. (Doc. 6 at 10-13). Plaintiff testified that she suffers severe pain in her neck, shoulders, elbows, back, knees, and feet. She testified that her medications make her drowsy and sometimes dizzy. She has a hard time

sleeping at night, must nap during the day, requires frequent use of the bathroom due to diverticulitis, and drops things because her hands go numb. She also testified that her husband does most of the housework. (Tr. 259-261, 288).

There is no dispute that there is objective evidence of an underlying medical condition as the ALJ acknowledged (Tr. 16, 146-47, 155) and as required under the *Duncan* pain test. *See* pages 6-7, *supra*. However, plaintiff has failed to point to specific record evidence showing that such objective medical evidence confirms the severity of the pain she alleges or that her objectively established medical conditions can reasonably be expected to produce her allegedly disabling pain. *Duncan,* 801 F.2d at 853. Plaintiff points to her own subjective testimony as evidence confirming the extent of her alleged limitations and pain. (Doc. 6 at 11-12). Such subjective evidence does not satisfy the *Duncan* test and cannot alone support a finding of disability. *Duncan,* 801 F.2d at 852-53; 20 C.F.R. § 404.1529. *See also McCormick v. Secretary,* 861 F.2d 998, 1001 (6th Cir. 1988). Plaintiff also points to the side effects from her medications about which she testified. (Tr. 259, 288). However, as the ALJ noted, the medical records show no complaints of side effects to any of her medications (Tr. 17) and plaintiff has pointed to no medical evidence to the contrary. The ALJ also noted that while the record shows degenerative changes in plaintiff's lumbar and cervical spines, knees, and hips, the changes are generally mild; she has never been recommended for or undergone surgery for her conditions and has undergone physical therapy with significant improvement in her condition. (Tr. 17). Nor do the medical records confirm difficulty with diarrhea or frequent need to use the restroom as a result of her diverticular disease. (Tr. 17). The ALJ also compared plaintiff's hearing testimony of extreme limitations with her other reported limitations to her doctors and to the Social Security

21

Administration. (Tr. 16-17). For example, the ALJ noted that plaintiff reported to Dr. Williams in February 2005 that she was going to Florida for 2 to 3 weeks. (Tr. 16, 195). Notably, this was plaintiff's second trip to Florida in about 8 months; on July 30, 2004, about a month after she claimed she became disabled, plaintiff was seen reporting right hip pain after she fell while on vacation, and may have aggravated the problem further "a few days after that when she was swimming in some water." (Tr. 191). Though plaintiff testified she performed few household activities, the ALJ noted that plaintiff reported to the Administration that she took care of her personal needs, cooked, did some dusting and sink cleaning, let out and fed the dogs, went to the grocery store and used electric carts, and went to church. (Tr. 16-17, 103-105). In determining credibility, the ALJ may consider the claimant's testimony of limitations in light of other evidence of the claimant's ability to perform other tasks such as walking, going to church, going on vacation, cooking, and other household and social activities. *Heston v. Commissioner*, 245 F.3d 528, 536 (6th Cir. 2001); *Blacha v. Secretary*, 927 F.2d 228, 231 (6th Cir. 1990).

The ALJ's decision sets forth in detail the reasons for her credibility finding. (Tr. 16-17). The ALJ's decision reflects that she properly considered the required factors in determining plaintiff's credibility, including her allegations of disabling pain. See 20 C.F.R. § 404.1529(c). In light of the ALJ's opportunity to observe plaintiff's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Kirk*, 667 F.2d at 538. *See also Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997); *Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir. 1987). Accordingly, the Court finds substantial evidence supports the ALJ's credibility finding in this matter. Therefore, plaintiff's third and fourth assignments of error should be overruled.

Plaintiff's fifth assignment of error asserts the ALJ failed to consider plaintiff's inability to sustain a full work week in accordance with Social Security Ruling 96-8p ("Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). In support of her argument, plaintiff cites to her own hearing testimony and the January 2006 FCE indicating skepticism on the part of the evaluator as to her ability to sustain full-time work. (Doc. 6 at 14-15).

Plaintiff's argument is necessarily dependent upon the success of her first and third assignments of error. For the reasons discussed above, the ALJ's RFC and credibility findings are supported by substantial evidence. The ALJ reasonably accommodated the therapist's concern with plaintiff's ability to engage in full time employment "due to poor tolerances with sustained postures and activities" (Tr. 223) by posing a hypothetical question to the VE that included the limitation that plaintiff be permitted to alternate positions at will. (Tr. 297). The ALJ was not required to include any limitations based on plaintiff's unsubstantiated complaints in his hypothetical question to the VE. *See Stanley*, 39 F.3d at 118. The ALJ's hypothetical questions to the VE included the limitations found to be credible and the VE testified that plaintiff could perform both her past relevant work and other sedentary jobs in the national economy. Therefore, plaintiff's fifth assignment of error is without merit.

Plaintiff's six assignment of error asserts the ALJ identified the incorrect DOT designation in evaluating plaintiff's past relevant work as an event coordinator of religious

events. (Doc. 6 at 15-16). Plaintiff contends the DOT for "Director, Religious Education"[3] identified by the VE requires a Masters Degree, is a less physically demanding job than that actually performed by plaintiff, and contains job duties plaintiff did not previously perform like analyzing revenue and program cost data to determine budget priorities. *Id.*

Plaintiff has cited no authority for her assertion that this DOT listing requires a Masters Degree. In addition, and contrary to her claim that she did not analyze revenue and program costs to determine budget priorities, plaintiff reported to the Administration that one of her job duties was to "plan and manage the budget." (Tr. 70). Finally, even if the DOT listing describes job duties different from those claimed by plaintiff, in establishing her prima facie case of disability, plaintiff must prove not only an inability to perform her past relevant work as she actually performed it, but an inability to return to her former type of work as it was typically performed. *Studaway v. Secretary of HHS*, 815 F.2d 1074, 1076 (6th Cir. 1987), citing *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986). "Former type" of work means the general kind of work, e.g., janitorial work, that plaintiff used to perform. *Studaway*, 815 F.2d at 1076. In other words, the ALJ must consider whether the claimant can perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Garcia v. Secretary of Health and Human Services*, 46 F.3d 552, 557 (6th Cir. 1995), citing

---

[3]"Plans, organizes, and directs religious education program designed to promote religious education among congregation membership and counsels members concerning personal problems: Analyzes revenue and program cost data to determine budget priorities. Analyzes member participation, and changes in congregation emphasis to determine needs for religious education. Develops study courses and supervises instructional staff. Counsels students. Plans congregational activities and projects to attract attention to, and encourage active participation in programs. Promotes student participation in extracurricular congregational activities. Visits homes of congregation members and confers with CLERGY MEMBER (profess. & kin.) 120.107-010, congregation officials, and congregation organizations to solicit support and participation, and to stimulate interest in religious and educational programs. Participates in such denominational activities as giving help to new congregations and small congregations. Interprets work of school to public through speaking or discussion-leading in related fields, and contributes articles to local and national publications. Orders and distributes school supplies.

Social Security Ruling 82- 61. The VE testified that given an individual of plaintiff's age, education, experience, and medical history, who could sit for 6 hours, stand for two hours, lift 10 pounds occasionally, and 5 pounds frequently, and who needed to alternate between sitting and standing at will, plaintiff could perform her past relevant work as performed generally in the economy as defined by the DOT as well as a significant number of other sedentary jobs in the national economy. (Tr. 297). Thus, even assuming plaintiff could not perform her past relevant work as she actually performed it, substantial evidence supports the ALJ's finding that plaintiff retained the residual functional capacity to perform her past relevant work as generally performed and other sedentary jobs in significant numbers.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this case be dismissed from the docket of this Court.

Date: 12/9/08

Timothy S. Hogan
United States Magistrate Judge

25

PATRICIA BRUCE,
    Plaintiff

        vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:08-cv-328
(Dlott, J.; Hogan, M.J.)

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to these proposed findings and recommendations within **TEN DAYS** after being served with this Report and Recommendation ("R&R"). Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this R&R is being served by mail. That period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **TEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).